**The STATE of Ohio, Appellee,**

v.

**REDDY, Appellant.**

[Cite as *State v. Reddy*, 192 Ohio App.3d 108, 2010-Ohio-5759.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 92924.

Decided Nov. 24, 2010.

110

112

William D. Mason, Cuyahoga County Prosecuting Attorney, and Pinkey S. Carr and Mahmoud Awadallah, Assistant Prosecuting Attorneys, for appellee.

James E. Valentine, for appellant.

ON RECONSIDERATION [1]

MARY EILEEN KILBANE, Presiding Judge.

{¶ 1} Appellant, Joseph Reddy ("Reddy"), appeals his conviction for the aggravated murder of his mother, Gloria Reddy ("Gloria"). Counsel for Reddy argues that the state failed to present sufficient evidence to support the finding that he acted with prior calculation and design, that his conviction was against the manifest weight of the evidence, and that his counsel was ineffective. In a pro se brief filed by Reddy, he argues that the trial court erred in admitting photographs depicting suspected blood spatter and alleges prosecutorial misconduct. After a review of the record and pertinent law, we modify Reddy's conviction from aggravated murder to murder, vacate his sentence, and remand for resentencing.

{¶ 2} The following facts give rise to the instant appeal.

{¶ 3} Reddy had a troubled relationship with his mother, Gloria. In a statement to police, Reddy stated that when he was 14 years old, he was removed from Gloria's care after she physically assaulted him. He was placed in a group home, where he lived for four years. When Reddy turned 18 years old, he left the group home and moved in with his girlfriend, Michelle Dahlberg. He lived

---

1. The original announcement of decision, *State v. Reddy*, Cuyahoga App. No. 92924, 2010-Ohio-3996, 2010 WL 3351428, released August 26, 2010, is hereby vacated. This opinion, issued upon reconsideration, is the court's journalized decision in this appeal. See App.R. 22(C); see also S.Ct.Prac.R. 2.2(A).

with Dahlberg until January 2007, when he and Dahlberg ended their relationship. Reddy, 21 years old, moved in with his mother, who lived in a multifamily house located at 1432 West 112th Street, Cleveland, Ohio, where his 17–year–old brother, Andrew, also lived.

{¶ 4} Reddy further stated that Gloria suffered from mental illness, as well as drug and alcohol problems, and she became increasingly violent toward Reddy and Andrew. On July 26, 2007, due to the fact that Gloria was in jail and there had been increasing discontent and violence in the home, Andrew moved out and went to live with a neighbor, Donna Amato, who lived a few houses down, at 1422 West 112th Street, in Cleveland, Ohio. According to Amato, she took Andrew into her home after he arrived at her son's birthday party bruised and bloodied and stated that Reddy had physically assaulted him.

{¶ 5} On December 24, 2007, at approximately 4:00 a.m., according to the statement Reddy gave to police, Gloria came into his bedroom and told him that he had to leave the house. Reddy refused to leave because it was Christmas Eve and he had nowhere to go. He alleged that the argument escalated and Gloria went to her bedroom and returned with a dagger, pushed Reddy's bedroom door in, and threatened to kill him. Reddy punched Gloria in the face several times, tackled her to the ground, and then choked her until she stopped moving. Reddy maintained that the entire event occurred in his bedroom.

{¶ 6} Reddy wrapped Gloria's body in a blanket, placed it in a basement storage locker, took Gloria's ATM card, and left the house. Reddy used the ATM card several times to withdraw cash from an ATM machine at Fred's Deli, located at 11119 Detroit Avenue, in Cleveland.

{¶ 7} On December 31, 2007, Andrew contacted his uncle, Theodore Reddy ("Theodore"), and informed him that he could not find Gloria. The following day, Theodore met Andrew outside Gloria's house. The two entered together and walked throughout the house looking for Gloria, but did not find her.

{¶ 8} On January 2, 2008, Theodore met Andrew again at Gloria's house. After they were still unable to find her, Theodore contacted the Cleveland police. Lieutenant James Plent responded to the call and arrived at Gloria's house. Plent stated that he noticed bloodstains on the walls, and Andrew informed him that the key to the basement storage area was missing.

{¶ 9} Plent believed that Gloria's body could have been in the basement storage area. Theodore kicked in the locked door to the basement storage area. Plent entered the storage area and discovered Gloria's body, at which point he contacted the homicide unit.

{¶ 10} On January 9, 2008, Reddy arrived at the house of Jason Pagan ("Jason"), appearing dirty and distraught. Reddy confessed to Jason's brother,

Jonathan Pagan ("Jonathan"), that he had killed his mother during an argument before Christmas. Reddy showed the brothers a dagger he had brought with him and made several references to going to Dahlberg's residence to give her and her boyfriend a "Christmas present."

{¶ 11} Fearing that Reddy might harm Dahlberg, Jonathan called police as soon as Reddy left and told them that Dahlberg might be in danger. Cleveland police officers responded to Dahlberg's residence. When Dahlberg did not answer the door, Cleveland police officer Robert Nagy entered the residence through a window. Several other officers subsequently entered, and Reddy was apprehended in the basement.

{¶ 12} On January 18, 2008, a two-count indictment was issued against Reddy. Count 1 charged Reddy with aggravated murder, in violation of R.C. 2903.01(A), a felony of the first degree. Count 2 charged Reddy with aggravated robbery, in violation of R.C. 2911.01(A)(3), a felony of the first degree.

{¶ 13} On February 3, 2009, Reddy waived his right to a jury trial, and the matter proceeded to a bench trial.

{¶ 14} On February 6, 2009, the trial court granted Reddy's Crim.R. 29 motion with respect to Count 2, aggravated robbery, and found Reddy guilty of Count 1, aggravated murder.

{¶ 15} On February 15, 2009, the trial court sentenced Reddy to 20 years to life.

{¶ 16} Reddy, through his counsel, raises three assignments of error.

**Assignment of Error No. One**

The evidence was insufficient to support the conviction for aggravated murder.

{¶ 17} When this court reviews a defendant's claim that the evidence presented at trial was insufficient to support the conviction, " 'the relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Leonard,* 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, at ¶ 77, quoting *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶ 18} When an appellate court addresses the sufficiency of the evidence, it does not assess whether the state's evidence should be believed, but whether, if believed, it would support the conviction. *State v. Dykas,* 185 Ohio App.3d 763, 2010-Ohio-359, 925 N.E.2d 685, at ¶ 10, citing *Jenks* at 263. Specifically, this court must look to whether the state met its burden at trial with

respect to each of the elements of the charged crime. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541.

{¶ 19} Reddy was charged with aggravated murder, in violation of R.C. 2903.01, which states, "No person shall purposely, and with *prior calculation and design,* cause the death of another * * *." (Emphasis added.) This statute was amended in 1973, because " '[b]y judicial interpretation of the former Ohio law, murder could be premeditated even though the fatal plan was conceived and executed on the spur of the moment.' " *State v. Hough,* 8th Dist. No. 91691, 2010-Ohio-2770, 2010 WL 2432856, ¶ 13, quoting *State v. Keenan* (1998), 81 Ohio St.3d 133, 157, 689 N.E.2d 929. The legislature, apparently disagreeing with that interpretation, amended the aggravated-murder statute to require prior calculation and design. While Reddy does not dispute that he killed his mother, he argues that there was no evidence that he had acted with prior calculation and design.

{¶ 20} In *State v. Cassano,* 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, ¶ 79, the Ohio Supreme Court noted that there is no bright-line rule to determine whether a defendant acted with prior calculation and design. The *Cassano* court acknowledged that prior calculation and design required more than premeditation. Id., quoting *State v. Cotton* (1978), 56 Ohio St.2d 8, 10 O.O.3d 4, 381 N.E.2d 190, paragraph one of the syllabus. Specifically, prior calculation and design requires " 'a scheme designed to implement the calculated decision to kill.' " *State v. D'Ambrosio* (1993), 67 Ohio St.3d 185, 196, 616 N.E.2d 909, quoting *Cotton* at 11.

{¶ 21} Although there is no bright-line rule for determining prior calculation and design, in *State v. Taylor* (1997), 78 Ohio St.3d 15, 19, 676 N.E.2d 82, the Ohio Supreme Court stated that factors to consider include:

(1) Did the accused and victim know each other, and if so, was that relationship strained? (2) Did the accused give thought or preparation to choosing the murder weapon or murder site? and (3) Was the act drawn out or "an almost spontaneous eruption of events"?

{¶ 22} In the instant case, the parties obviously knew each other, being mother and son, and they had a strained relationship; however, the remaining two factors indicate that there was no prior calculation and design.

{¶ 23} With respect to the second factor enumerated in *Taylor,* a review of the record in this case demonstrates that Reddy did not deliberately choose the murder weapon or the location of the murder.

{¶ 24} Gloria was murdered in the early morning hours of Christmas Eve during yet another argument between her and Reddy. Reddy alleged that Gloria came into his bedroom with a dagger and began the altercation. Reddy did not

seek out Gloria, nor did he have a weapon. Although he stated that Gloria came at him with a dagger, he did not stab Gloria with the dagger. Rather, he used his bare hands. This evidences the fact that there was no planning with respect to the weapon to be used, as Reddy used his hands when he could have used the dagger after gaining the upper hand in their physical struggle. Reddy did not seek out Gloria by going into her bedroom; rather, the incident occurred in Reddy's bedroom after Gloria pushed Reddy's door in and threatened him with a dagger.

{¶ 25} The third factor listed in *Taylor*, 78 Ohio St.3d 15, 676 N.E.2d 82, analyzes whether the killing was drawn out or a spontaneous eruption of events. The facts in this case indicate that it was a spontaneous eruption of events. Gloria was mentally ill and had substance-abuse problems, which resulted in frequent violent outbursts. On December 22, 2008, Gloria gave her neighbor, Amato, a sealed letter that was to be opened if something ever happened to her. The letter stated that a listening device had been installed in her basement and that the Mafia and "men from Hollywood" were taking pictures of her with their cell phones. The letter also stated that if she was murdered, it was by the record industry because they were upset with her for not responding to certain love songs. This letter supports Reddy's contention that his mother suffered from mental illness and was unstable.

{¶ 26} In concluding that Reddy's attack on Gloria was a drawn-out event, the trial court relied heavily on pictures that depicted blood throughout the house. The trial court stated that blood was present not only in Reddy's room, where he alleges the incident took place, but also in the hallways and living room. However, there was no testing performed on the alleged blood stains to determine whether the substance was in fact blood and, if so, whose blood it was and how long the blood had been there. There is evidence of a history of violent behavior in the home, and the blood depicted in the photographs could have been there from prior physical violence.

{¶ 27} Gloria had been increasingly violent with Andrew during the last year of her life. Andrew testified to numerous instances of violence within the home. He stated that his mother chased him with a hammer and, on one occasion, bruised his rib. Andrew also stated that shortly before he moved out of Gloria's house to live with his neighbor, Amato, Reddy punched his fist into one of the walls, drawing blood. Thus, the blood could have come from any one of the individuals in the house, during one of the numerous instances of violence within the house. We find that the trial court erred in relying exclusively on the presence of blood throughout the home as the critical factor in determining that there was prior calculation and design.

{¶ 28} This court recently analyzed prior calculation and design in *Hough*, 2010-Ohio-2770, 2010 WL 2432856, which demonstrates the level of planning required to establish prior calculation and design. Hough had a longstanding feud with one of his neighbors. One night, upset that a neighbor and his friends were being noisy, Hough approached the neighbor with a loaded gun and stated, "You f\*\*king kids won't be doing this s\*\*t no more." Id. at ¶ 3. Hough then shot the neighbor and two of his friends, killing all three of them. Hough then shot two other individuals, injuring them, and went back into his house.

{¶ 29} Although Hough argued that he had "just snapped," this court concluded that he had acted with prior calculation and design. Hough put deliberate thought into his choice of weapon. Hough's wife testified that she heard Hough get out of bed and go down to the kitchen. Rather than take the gun in his bedroom, he specifically went to the kitchen to get a different gun that was stored in a cabinet. Hough also waited for the neighbors across the street to go inside before going outside with his loaded gun and confronting his neighbors.

{¶ 30} The facts in this case do not demonstrate that there was prior calculation and design, as was present in *Hough*, 2010-Ohio-2770. Hough specifically chose both his weapon and the location of the murders. He specifically waited for his other neighbors to go back inside before he approached the victims.

{¶ 31} In the instant case, there was no evidence to suggest that Reddy had planned to kill his mother. In fact, the only evidence presented at trial indicates that it was a spontaneous act that occurred during yet another argument between Reddy and Gloria. It was Gloria who confronted Reddy in his bedroom. This is in sharp contrast to the facts in *Hough*, in which Hough sought out the victims.

{¶ 32} Detective Ignatius Sowa of the Cleveland Police Department testified that he interviewed Gloria's neighbor, Alecia Hughley, shortly after the discovery of Gloria's body. Hughley told Sowa that she had heard Reddy and Gloria arguing shortly before Gloria disappeared and, specifically, that she heard Reddy yelling at Gloria to put her knife down.

{¶ 33} Numerous witnesses testified that Reddy and his mother had a troubled relationship and that Reddy had been physically and verbally abused by his mother for years. These facts support Reddy's contention that he did not plan to kill his mother and that she was killed during an instantaneous eruption of events. Reddy's uncle, Theodore, as well as his two longtime friends, Jonathan and Jason Pagan, all testified that Reddy told them that Gloria came into his bedroom with a knife and threatened him.

{¶ 34} In *State v. Simms* (Sept. 19, 1996), 8th Dist. No. 69314, 1996 WL 532090, this court concluded that murder stemming from an instantaneous eruption of events does not constitute murder with prior calculation and design. In *Simms*,

the defendant got into a fight with one of his friends at a party. The defendant placed his friend in a chokehold while holding a gun to his head. The friend begged the defendant not to shoot him, at which point the defendant shot him multiple times, killing him. This court concluded that there was no evidence of prior calculation and design because the incident stemmed from a spontaneous fight. Similarly, in the instant case, Gloria's death stemmed from an eruption of events between her and Reddy in the early-morning hours of Christmas Eve.

{¶ 35} Although the record clearly does not support a conviction for aggravated murder, the record does support a conviction for murder pursuant to R.C. 2903.02. It is well established that this court has the authority to reduce a conviction to that of a lesser included offense when it is supported by the record, rather than ordering an acquittal or a new trial. *State v. Davis* (1982), 8 Ohio App.3d 205, 207, 8 OBR 276, 456 N.E.2d 1256, citing *State v. Sumlin* (June 29, 1978), 8th Dist. No. 37559, 1978 WL 218098.

{¶ 36} Murder is defined by R.C. 2903.02, which states that "[n]o person shall purposely cause the death of another." An individual acts purposely when "it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A).

{¶ 37} Reddy admitted in his statement that he intentionally pressed his hands around his mother's neck in order to render her unconscious. An accused is presumed to know and intend what he does, and "[a] guilty intent may be established from inferences reasonably drawn * * * from facts which have been proved beyond a reasonable doubt, including acts and statements of a defendant." *State v. Wallen* (1969), 21 Ohio App.2d 27, 34, 50 O.O.2d 50, 254 N.E.2d 716. Further, Reddy's intent may be inferred from all of the surrounding circumstances, "including the instrument used to produce death, its tendency to destroy life if designed for that purpose, and the manner of inflicting a fatal wound." *State v. Robinson* (1954), 161 Ohio St. 213, 53 O.O. 96, 118 N.E.2d 517, paragraph five of the syllabus. Thus, in the present case, when we contrast Reddy's subsequent statement that he did not intend to kill his mother with his admission that he intentionally strangled her and all the surrounding circumstances, it is not sufficient enough to warrant outright reversal, as opposed to modification. Consequently, we modify Reddy's conviction to find him guilty of one count of murder.

{¶ 38} Therefore, Reddy's first assignment of error is sustained in part, and his conviction is modified accordingly.

### Assignment of Error No. Two

The verdict is against the manifest weight of the evidence.

{¶ 39} In light of our disposition of the above assignment of error, this assignment of error is moot.

### Assignment of Error No. Three

Appellant was denied his right to effective assistance of counsel, guaranteed by Article 1, Section 10 of the Ohio Constitution and the Sixth and Fourteenth Amendments of the United States Constitution when trial counsel failed to subpoena a witness who would corroborate that appellant was attacked by the victim with a knife and failed to have suspected blood DNA tested.

{¶ 40} Reddy argues that his counsel was ineffective because he failed to subpoena Gloria's upstairs neighbor, Alecia Hughley, to testify that she heard the altercation between Reddy and Gloria and heard Reddy telling Gloria to put her knife down. Reddy also contends that his counsel was ineffective in failing to test the dagger for blood. After a review of the record, we disagree.

{¶ 41} The Sixth Amendment affords criminal defendants the right to receive counsel to assist in their defense. In order for a defendant to establish that his counsel was ineffective, he must demonstrate that counsel's performance fell below an objective standard of reasonable representation. *State v. Lottie,* 8th Dist. No. 93050, 2010-Ohio-2598, 2010 WL 2333052, at ¶ 15, citing *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶ 42} In *Strickland,* the United States Supreme Court established a two-pronged test to analyze whether defense counsel's representation was so deficient that the defendant's conviction merits reversal. The court stated:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶ 43} There is a strong presumption that counsel provided effective assistance. *State v. Smith* (1985), 17 Ohio St.3d 98, 17 OBR 219, 477 N.E.2d 1128, citing *Strickland* at 687. A properly licensed attorney is presumed competent. *Smith* at 100, citing *Vaughn v. Maxwell* (1965), 2 Ohio St.2d 299, 301, 31 O.O.2d 567, 209 N.E.2d 164. The burden of demonstrating that counsel was ineffective is on the defendant. *State v. Smith* (1981), 3 Ohio App.3d 115, 3 OBR 130, 444 N.E.2d 85.

{¶ 44} Although Reddy maintains that counsel was ineffective in failing to subpoena Hughley, a review of the record reveals that Hughley was sent a subpoena, but that she no longer lived at that address; therefore, she did not receive the subpoena. We cannot conclude that Reddy was prejudiced by Hughley not being present to testify because Detective Sowa specifically testified that during his investigation, Hughley told him that she had heard Reddy and Gloria arguing and that Reddy yelled for his mother to put down her knife. This was a bench trial, and the trial court had the opportunity to hear Hughley's statements during Sowa's testimony.

{¶ 45} Reddy also argues that trial counsel was ineffective because he failed to have the dagger and the blood found within the residence tested for DNA. In his statement to police, Reddy never stated that he had been cut with the dagger; therefore, there would be no reason to test it for blood. A preliminary test indicated that blood might have been present on the dagger; however, Curtiss Jones, the supervisor of the trace-evidence department at the Cuyahoga County Coroner's Office, testified that because the dagger was partially made of copper, it could give a false reading for the presence of blood.

{¶ 46} Further, Reddy's argument that the blood spatter in the home should have been tested is moot. The trial court relied on the blood-spatter evidence to find that Reddy acted with prior calculation and design; however, we determined in Reddy's first assignment of error that the state failed to present evidence to support this contention.

{¶ 47} Therefore, Reddy's third assignment of error is overruled.

{¶ 48} In addition to the three assignments of error asserted by Reddy's counsel, Reddy also filed a supplemental brief asserting seven additional assignments of error.

{¶ 49} On reconsideration, Reddy argues that we have somehow failed to address his pro se assignments of error. This is incorrect. Reddy's first three pro se assignments of error all deal with blood-spatter evidence, and therefore, we will address them together.

**Assignment of Error No. One**

The trial court erred in admitting into evidence photographs of untested suspected blood spatter and finding appellant guilty based on photographs of untested suspected blood spatter to the prejudice of appellant in violation of appellant's right to a fair trial and due process as guaranteed by the Fifth and Fourteenth Amendments of the U.S. Constitution and Section 16 Article 1 of the Ohio Constitution.

### Assignment of Error No. Two

Appellant's fifth amendment right against self-incrimination as guaranteed by the United States Constitution was violated when [the] trial court emphasized that the appellant could not explain untested suspected blood spatter.

### Assignment of Error No. Three

Trial court improperly allowed questioning and testimony regarding untested suspected blood spatter photographs to the prejudice of appellant in violation of due process right to a fair trial as guaranteed by the U.S. Constitution and Article I Section 10 of the Ohio Constitution.

{¶ 50} Essentially, Reddy argues that the trial court erred when it admitted photographs depicting suspected blood spatter, and further, when it allowed the prosecution to state that Reddy was unable to explain the blood spatter. After a review of the record and applicable case law, we disagree.

{¶ 51} At trial, several photographs were admitted into evidence depicting what appears to be blood in various places throughout Gloria's house, including the loveseat, carpeting, hallway, sliding door, bathtub, and Reddy's bedroom. Reddy argues that it was improper to admit the photographs unless the suspected blood spatter in the photographs was actually tested and conclusively determined to be blood.

{¶ 52} We review a lower court's ruling on the admission of evidence for an abuse of discretion. *State v. Ray*, 189 Ohio App.3d 292, 2010-Ohio-2348, 938 N.E.2d 378, at ¶ 28, citing *State v. Duncan* (1978), 53 Ohio St.2d 215, 7 O.O.3d 380, 373 N.E.2d 1234. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 53} "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Greer*, 8th Dist. No. 92910, 2010-Ohio-1418, 2010 WL 1253747, at ¶ 10, citing *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343. "Photographs are admissible into evidence as long as they are properly identified, are relevant and competent, [evidence] and are accurate representations of the scene [that] they purport to portray." *Buchanan v. Spitzer Motor City, Inc.* (Feb. 7, 1991), 8th Dist. Nos. 57893 and 58058, 1991 WL 13003, *6, citing *Heldman v. Uniroyal, Inc.* (1977), 53 Ohio App.2d 21, 31, 7 O.O.3d 20, 371 N.E.2d 557.

{¶ 54} In an analogous case, *State v. Hoop* (1999), 134 Ohio App.3d 627, 731 N.E.2d 1177, photographs were admitted that depicted suspected blood spatter, but the substance in the photographs had not been tested and, therefore, had not

conclusively been determined to be blood. The *Hoop* court concluded that whether the substance in the photographs was actually blood "went to the probative value of the photographs, not their admissibility." Id. at 637–638.

{¶ 55} It is undisputed that Gloria was killed in her house; therefore, photographs of what appears to be blood in several parts of the house are clearly relevant. Detective Sowa testified that the photographs accurately depicted the scene at the house. Reddy had the opportunity, and did, in fact, cross-examine Sowa regarding why the blood spatter was not tested for DNA evidence. Consequently, we find no merit to this argument. We disagree with Reddy's contention that some explanation is necessary to determine "how or why" photographs of suspected blood spatter at the murder scene are relevant. This is a case in which Reddy repeatedly stabbed his mother after strangling her during a struggle; it is axiomatic that evidence of suspected blood spatter is relevant. In such cases, the probative value of such photographic evidence, whether the substance is tested or not, clearly outweighs the danger of prejudice to the defendant. Id. Contrary to Reddy's argument, their admission, and the trial court's reliance upon them in convicting Reddy does not "stipulate to the danger of prejudice outweighed by any probative value the photos had to offer." Merely because the suspected blood-spatter evidence is prejudicial does not mean it is inadmissible.

{¶ 56} Reddy also argues that the trial court erred when it allowed the state to comment on the fact that he did not testify, and further, that the trial court itself relied on Reddy's failure to testify as a basis for his conviction.

{¶ 57} Reddy does not cite any portion of the transcript to support his contention that the state commented on the fact that he did not testify. It is well established that an appellant is required to cite specific portions of the record in order to support his assignments of error. *State v. Howard*, 8th Dist. No. 85500, 2005-Ohio-5135, 2005 WL 2386600, at ¶ 17; App.R. 16(D). After a review of the record, we can find no such statement by the state.

{¶ 58} Even if the state had commented on Reddy's failure to testify, such a statement would clearly be inadmissible. In a bench trial, the trial court is presumed to have considered only admissible evidence unless the record indicates otherwise. *Cleveland v. Welms*, 169 Ohio App.3d 600, 2006-Ohio-6441, 863 N.E.2d 1125, at ¶ 27, citing *State v. Fautenberry* (1995), 72 Ohio St.3d 435, 650 N.E.2d 878.

{¶ 59} Reddy argues that the trial court made statements evidencing the fact that it had considered Reddy's decision not to testify in support of its verdict. The trial court stated that Reddy failed to explain the evidence against him,

meaning that his defense did not adequately address all of the evidence against him. This statement by the trial court did not refer to Reddy's decision not to testify.

{¶ 60} Reddy's first three assignments of error are overruled.

### Assignment of Error No. Four

Prosecution stacking interferences upon inferences and prosecutorial misconduct deprived appellants [sic] right to a fair trial and due process as guaranteed by the Fifth and Fourteenth Amendments of the U.S. Constitution and Section 16 Article I of the Ohio Constitution.

{¶ 61} At the outset, we note that Reddy never objected during either the state's initial closing argument or its rebuttal. Therefore, Reddy has waived all but plain error. *State v. Salahuddin,* 8th Dist. No. 90874, 2009-Ohio-466, at ¶ 55, citing *State v. Slagle* (1992), 65 Ohio St.3d 597, 605 N.E.2d 916. Pursuant to Crim.R. 52(B), plain error may be noted and may require reversal even though it was not brought to the attention of the trial court. An appellate court should be cautious in noting plain error and do so only in exceptional circumstances to avoid a miscarriage of justice. *Salahuddin* at ¶ 55–58, citing *State v. Long* (1978), 53 Ohio St.2d 91, 94, 7 O.O.3d 178, 372 N.E.2d 804. "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise." *State v. Moreland* (1990), 50 Ohio St.3d 58, 552 N.E.2d 894, citing *State v. Long.*

{¶ 62} Reddy argues that the state made inferences upon inferences in order to establish its case against him. He further argues that several remarks made by the state constituted prosecutorial misconduct. We find that these arguments are without merit.

{¶ 63} Reddy argues that the state concluded its case in closing argument by making inferences upon inferences in order to establish that he had acted with prior calculation and design. Reddy also argues that the state committed prosecutorial misconduct by making certain references to the crime in closing argument. However, parties are given wide latitude when making their closing arguments. *State v. Hand,* 107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151, ¶ 16, citing *State v. Lott* (1990), 51 Ohio St.3d 160, 555 N.E.2d 293. The state can summarize the evidence and draw conclusions as to what the evidence shows. *Lott* at 165. "The test for prosecutorial misconduct during closing argument is whether the remarks were improper and, if so, whether they prejudicially affected the accused's substantial rights." *State v. Almashni,* 8th Dist. No. 92237, 2010-Ohio-898, 2010 WL 856212, at ¶ 29, citing *State v. Smith* (1984), 14 Ohio St.3d 13, 14 OBR 317, 470 N.E.2d 883. We review the record in its entirety to determine whether the defendant was prejudiced. *Lott* at 166.

{¶ 64} After reviewing the record, we cannot conclude that any additional statements made by the state during its arguments prejudicially affected Reddy's substantial rights. As stated above, parties are given wide latitude during closing arguments and may make inferences based upon the evidence. The trial court did not commit plain error in allowing the prosecutor to make the arguments Reddy complains of.

{¶ 65} This assignment of error is overruled.

**Assignment of Error No. Five**

Appellant was denied his right to effective assistance of counsel as guaranteed by the Sixth Amendment of the U.S. Constitution and Section 10 Article I of the Ohio Constitution.

{¶ 66} Although we previously addressed whether the trial court was ineffective in assignment of error No. three from the brief prepared by Reddy's counsel, in his pro se brief, Reddy presents several additional arguments for our review. After a review of the record and applicable evidence, we find Reddy's arguments to be without merit.

{¶ 67} Reddy argues that trial counsel was ineffective by failing to object to the following: admissibility of the photographs that depicted suspected blood spatter; instances of prosecutorial misconduct; not having the dagger tested for blood; and not requesting a continuance when Hughley did not appear to testify. Because we have addressed these issues in previous assignments of error, these issues are moot.

{¶ 68} Reddy also argues that trial counsel was ineffective in failing to present evidence that Gloria had abused him as a child. However, a review of the record indicates that that is not accurate. The past abuse Reddy suffered was the crux of his defense. In closing argument, Reddy's counsel stated:

How could there be any question after all of the people that testified, his girlfriend, Rachel, was the first one, [then] Michelle Dahlberg, and Donna Amato * * * [H]ow could the court believe anything other than the fact that this woman abused her children. * * * Can there be any doubt that after years of abuse, on Christmas Eve when he was attacked by his mother under the influence of sudden passion or a fit of rage, he fought back and attacked her?

{¶ 69} From the record, it is clear that trial counsel placed considerable emphasis on the fact that Gloria had abused Reddy.

{¶ 70} Next, Reddy argues that counsel was ineffective because he failed to file a motion for appointment of an investigator and a motion to suppress Reddy's written confession.

{¶ 71} Reddy's contention that his trial counsel failed to file a motion to appoint an investigator is inaccurate. A review of the record demonstrates that on February 4, 2008, trial counsel filed a motion to appoint an investigator. On February 22, 2008, trial counsel filed a renewed motion to appoint an investigator. On February 29, 2008, the trial court granted the motion and appointed the investigator requested by Reddy.

{¶ 72} While Reddy argues that trial counsel was ineffective in failing to suppress his written confession, he provides no legal basis that would support a motion to suppress. The written confession signed by Reddy specifically listed all of Reddy's Miranda rights, including the right to remain silent. Because Reddy has alleged no theory under which the confession could be suppressed, we cannot find that he was prejudiced.

{¶ 73} Finally, Reddy contends that trial counsel was ineffective in failing to present mitigating circumstances demonstrating that he acted out of sudden passion or in a fit of rage. However, a review of the record reveals that trial counsel's entire trial strategy was based upon this theory. Therefore, this argument lacks merit.

{¶ 74} This assignment of error is overruled.

### Assignment of Error No. Six

Appellant was denied his right to confrontation of adverse witnesses as guaranteed by the Confrontation Clause of Sixth Amendment of the United States Constitution and Section 10 Article I of the Ohio Constitution.

{¶ 75} Reddy argues that the trial court erred when it allowed Detective Sowa to testify as to statements made by Gloria's neighbor, Hughley, when Hughley did not appear to testify. Specifically, Reddy objects to Sowa's statement that Hughley stated she heard Gloria yell something to the effect of "you're not going to put your hands on me again, punk." However, the testimony Reddy now challenges was specifically elicited by Reddy during his cross-examination of Sowa.

{¶ 76} "A party cannot take advantage of an error he invited or induced." *State v. Wilson* (1996), 74 Ohio St.3d 381, 398, 659 N.E.2d 292, citing *State v. Seiber* (1990), 56 Ohio St.3d 4, 564 N.E.2d 408. Therefore, we do not reach the question of whether Sowa should have been permitted to testify regarding Hughley's statements to him because this testimony was elicited by Reddy and he cannot now challenge its admission on appeal.

{¶ 77} This assignment of error is overruled.

**Assignment of Error No. Seven**

Trial court abused its discretion in refusing to consider lesser degree of homicide in violation of appellants [sic] right to due process as guaranteed by the Fifth and Fourteenth Amendments of the U.S. Constitution and Ohio Constitution.

{¶ 78} Reddy argues that the evidence presented at trial was insufficient to demonstrate that he acted with prior calculation and design and that lesser included offenses should have been considered by the trial court. We agree, and having sustained a similar argument in Reddy's first assignment of error, we modified the judgment accordingly. Although Reddy argues specifically that the trial court committed reversible error by failing to consider convicting him of voluntary manslaughter, we have already found that the evidence in the record, while insufficient for aggravated murder, was sufficient to convict Reddy of murder. We presume that in reaching a verdict, the trial court considered all lesser and included offenses as well as inferior degree offenses, unless the record shows otherwise. Reddy's seventh assignment of error is overruled.

{¶ 79} After a review of the record, we find that the evidence was insufficient to support the prior-calculation-and-design element of aggravated murder. Therefore, Reddy's sentence for aggravated murder is modified to a conviction for murder, pursuant to R.C. 2903.02, and this matter is remanded for sentencing consistent with the conviction as modified.

Judgment accordingly.

BOYLE and McMONAGLE, JJ., concur.

