[Cite as *State v. Addison*, 2012-Ohio-260.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.   96514

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DEANGELO ADDISON

DEFENDANT-APPELLANT

### JUDGMENT:
### VACATED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-539828

**BEFORE:**   E. Gallagher, J., Sweeney, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:**    January 26, 2012

**ATTORNEY FOR APPELLANT**

Susan J. Moran
55 Public Square
Suite 1616
Cleveland, Ohio   44113-1901


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY:    Scott Zarzycki
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113


EILEEN A. GALLAGHER, J.:

{¶ 1}  Deangelo Addison appeals his conviction for two counts of felonious assault entered in the Cuyahoga County Common Pleas Court.  Addison argues that his convictions were supported by insufficient evidence, were against the manifest weight of the evidence, that he was denied his constitutional right to confront his accuser, and that the State acted improperly when it impeached its own witnesses.  Finding merit to this appeal, we reverse the judgment of the trial court, modify Addison's convictions, vacate his sentence, and remand for resentencing as to the modified convictions.

{¶ 2}  On July 7, 2010, Justin Brown went out with his brother, Anthony Brown

("Anthony"), and his friend, William Davis ("William"). The three males arrived at the Tonight's II Bar located at 16000 Libby Road in Maple Heights, Ohio. The three men were at the bar for approximately one half hour and then walked outside to smoke cigarettes. Justin testified that as he was outside, he saw his brother Anthony and William get into a fight with Deshawn Lee, a man with whom Anthony had problems with in the past. Deshawn testified that as Anthony bumped him as he walked into the bar, he then later started a fight with Anthony in the parking lot. Specifically, Deshawn testified that he punched Anthony, then William, and then returned to hitting Anthony in the head. Deshawn admitted that his punches knocked Anthony to the ground.

{¶ 3} While this first fight occurred, an unknown patron of Tonight's II walked inside the bar and said that a fight was going on outside. Addison and his friends, Brandon Lyons and Jay-William, walked outside to see the fight. When they walked outside, a second fight erupted almost immediately.

{¶ 4} Deshawn's friend, George Strickland, was also present for the fight and he testified that he saw Deshawn swing at two men, hitting them both. Strickland testified that he saw Deshawn hit William, knocking him unconscious, which caused William to hit his head against the door and then fall onto the ground. According to Strickland, he pulled Deshawn off Anthony and then he, Deshawn and a third friend got into Strickland's car and drove away.

{¶ 5} Both Deshawn and Strickland testified that as they drove off, Justin,

Anthony, and William were standing near the edge of the parking lot. Deshawn admitted that because the three males were acting aggressively, he pulled out a handgun and waived it at the three while driving away. Deshawn and Strickland testified that Deshawn had stored the gun in Strickland's glove box because bar security conducts pat downs upon entry and would have found it had Deshawn tried to bring the weapon into the bar.

{¶ 6} Justin Brown testified that Addison walked up to William and acted like he was going to shake William's hand. Brown testified that instead, Addison struck William on the left side of his head with an object. Justin stated that Addison also struck Anthony in the head with this same object. Justin was not able to identify the object used by Addison but stated that both William and Anthony fled the area after being hit. Justin fled towards the same area as Anthony did, eventually meeting up with his brother in a nearby parking lot. Justin testified that Anthony was bleeding from his head. Justin called 911, but Anthony declined medical treatment at the hospital and never appeared in court to testify against Addison.

{¶ 7} Addison denied Justin's version of the events. He testified that as soon as he, Brandon, and Jay-William walked outside, they were mistakenly identified as being friends with Deshawn, who admittedly started the first fight. Addison testified that Anthony swung at him and at Brandon and that there was a crowd of seven to eight individuals fighting. Addison testified that he ducked Anthony's punch but swung back,

hitting him in the head. Addison further testified that he may have hit another person but that it was difficult to tell, as there were a lot of people fighting outside and it all happened very quickly.

{¶ 8} Addison testified that when he heard that police officers were coming, he walked back into the bar, got patted-down for weapons, finished his drink, and then returned outside where he saw Brandon and also observed a group of males running down Broadway, away from the bar. Addison, Brandon, and Jay-William left the bar shortly thereafter.

{¶ 9} Brandon corroborated Addison's version of the events and stated that he did not see Addison hit anyone during the fight. He testified that he saw Addison tussling and grabbing with someone but never did he see Addison hit either Anthony or William. None of the testifying witnesses stated that they saw Addison with a gun at any point in time.

{¶ 10} William Davis went missing and his body was not located until July 16, 2010, when it was discovered by Maple Heights police officers in an advanced state of decomposition. The Cuyahoga County Coroner did not rule William's death a homicide because the Coroner could not state, to a reasonable degree of scientific certainty, that Davis's injuries were inflicted by another person. Deputy Coroner Dr. Dan Galita testified that the body was found at the bottom of a rocky embankment in a ravine, to which the victim could, theoretically, have fallen 20 to 30 feet. Additionally, the

Coroner could not specifically state the cause of death because there were three possibilities: (1) blunt force trauma to the back of the head behind the left ear; (2) acute alcohol intoxication as William's blood-alcohol level was .27; and (3) possible drowning due to the existence of sand and water in his lungs, indicating that he had breathed in the debris before he died. Lastly, the Coroner's report did not identify the cause of the blunt-force trauma, and listed it as "violence of undetermined origin."

{¶ 11} During the course of their investigation, Maple Heights police officers interviewed the parties involved in both fights as well as William Davis's family. Their investigation revealed inconsistent statements, with one witness stating that Addison stated in a telephone call that he had pistol-whipped William and others stating that Addison denied hitting anyone with a weapon.

{¶ 12} On August 11, 2010, a Cuyahoga County Grand Jury indicted Addison with two counts of murder, one count of involuntary manslaughter, four counts of felonious assault, and two counts of having a weapon while under disability. Each count contained both one- and three-year firearm specifications. Counts 6 and 7 related to Addison's alleged actions towards Anthony Brown while the remaining counts related to victim William Davis. Prior to commencement of trial, Addison executed a voluntary waiver of a jury trial and the State submitted a notice of dismissal of Count 1, murder.

{¶ 13} Trial commenced on January 14, 2011, and the State presented the following witnesses: Justin Brown, Deshawn Lee, George Strickland, Erica Walker, Dan

Galita, M.D., Brandon Lyons, Agent Daniel Winterich from the Bureau of Criminal Identification and Investigation, Maple Heights Police Officer Andrew Sperie, Selvin Cunningham, and Maple Heights Detective Jeffrey Canter. Addison testified as the defense's sole witness. On January 19, 2011, the trial court found Addison not guilty of all firearm specifications and not guilty of all charges other than Counts 4 and 6, felonious assault. On February 16, 2011, the trial court sentenced Addison to eight years on Count 4 and two years on Count 6, to run consecutive, for a total prison sentence of ten years.

{¶ 14} Addison appeals, raising the four assignments of error contained in the appendix to this opinion.

{¶ 15} In his first assignment of error, Addison argues that his convictions for felonious assault against both William Davis and Anthony Brown were not supported by sufficient evidence. We agree.

{¶ 16} The standard of review with regard to the sufficiency of the evidence is set forth in *State v. Bridgeman*, 55 Ohio St.2d 261, 381 N.E.2d 184 (1978), as follows:

> Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.

{¶ 17} *Bridgeman* must be interpreted in light of the sufficiency test outlined in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, in which the Ohio Supreme Court held:

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Citation omitted.)

{¶ 18} The court found Addison guilty of felonious assault, which pursuant to R.C. 2903.11 provides as follows: No person shall knowingly * * * cause serious physical harm to another * * *.

{¶ 19} R.C. 2901.01 defines serious physical harm as follows:

"Serious physical harm to persons" means any of the following:

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

{¶ 20} For purposes of clarification, this court shall address the two charges of felonious assault separately.

Felonious Assault of William Davis

{¶ 21} In support of the charge of felonious assault on victim William Davis, the state points to the testimony of Justin Brown and Dr. Dan Galita. Justin Brown testified that he saw Addison reach up and strike William with a black object "like a hook from the top of his head." Tr. 43. Brown could not identify the object but stated that William was highly intoxicated at the time of both fights and that after being hit, he stumbled, got up, and ran away. Justin could not identify any injuries to William at that time because he, William, and Anthony all fled from the area.

{¶ 22} Dr. Dan Galita testified that the victim suffered a fracture of his right zygomatic bone, a thin bone located just below the right orbit towards the right temple, which the state attributes to the punch delivered by Deshawn Lee. Dr. Galita also testified that the victim had a left occipital skull fracture ten centimeters long located in the back of the head on the left side. Dr. Galita could not identify the source of this fracture but testified that it could have been caused by a fall into the ravine where William's body was found.

{¶ 23} In viewing this evidence in the light most favorable to the prosecution, this court cannot say that any rational trier of fact could have found the essential elements of felonious assault proven beyond a reasonable doubt. *See Jenks.* In the present case, the State has failed to present any testimony or evidence proving serious physical harm as a result of the altercation between Addison and William. The testimony provided by Justin Brown could at best be construed as evidence that Addison struck William in the head but

it provides no evidence of serious physical harm, as William fled without Justin observing any injuries.

{¶ 24} Addison testified on his own behalf, admitting to fist fighting but denying that he ever struck anyone with anything other than his fist. Further, Addison could not identify whether he actually struck William but that when he returned a punch to Anthony Brown, he may have struck another person standing in the parking lot. Addison related that there were a lot of people fighting and that it all happened very quickly.

{¶ 25} In viewing the evidence in the light most favorable to the prosecution, we cannot ignore the fact that the state has failed to prove a causal nexus between a fight and the blunt force trauma that the state claims was the result of that fight. In either case, because William's injuries were sustained in circumstances so speculative in nature and because no witness was able to observe and testify to William's condition after this second fight, this court cannot let a conviction for felonious assault stand.

{¶ 26} Accordingly, we find that the state did not present sufficient evidence to support Addison's conviction for felonious assault against William Davis.

<u>Felonious Assault of Anthony Brown</u>

{¶ 27} In support of the charge of felonious assault against Anthony, the state presented the testimony of his brother, Justin Brown. Justin testified that he observed Addison strike Anthony in the head with the same object that he had used to strike William. Justin testified that he observed his brother in a "bad condition" bleeding from

the head and stumbling around. Justin identified two photographs of Anthony's head that showed he was bleeding on the night of July 7, 2010. However, the state failed to present any additional authenticating evidence as to who took the pictures or where they were taken.

{¶ 28} In response, the defense argues that the state failed to prove the element of serious physical harm. Because Anthony Brown failed to testify against Addison and, because Anthony refused medical treatment at the hospital, there is no evidence proving serious physical harm.

{¶ 29} We agree. Serious physical harm is specifically described in R.C. 2901.01 and requires a demonstration of at least one of five enumerated factors. In the present case, the state has failed to present sufficient evidence that Anthony suffered serious physical harm. Evidence that Anthony was bleeding from the head is not sufficient to prove he suffered serious physical harm. Additionally, Justin's testimony that Anthony was bleeding and stumbling is not sufficient to meet the statutory definition. There was no evidence that Anthony suffered prolonged intractable pain, that he had any permanent disfigurement, or that the injury caused him substantial temporary incapacity. Anthony's refusal of medical treatment deprives this court of any medical documentation of Anthony's alleged injuries.

{¶ 30} The state has failed to prove that Addison caused Anthony's injuries that were depicted in the photographs. Deshawn Lee admitted that he struck Anthony

multiple times in the head that night, testimony that was bolstered by George Strickland. However, Addison also admitted that he struck Anthony in the head with a closed fist. Justin Brown could not testify to his brother's condition after either fight because he was 20 to 25 feet away at the time and it was dark in the parking lot.

{¶ 31} Accordingly, we conclude that the state failed to support Addison's conviction of felonious assault against Anthony Brown with sufficient evidence.

{¶ 32} "[I]t is well established that this court has the authority to reduce a conviction to that of a lesser included offense when it is supported by the record, rather than ordering an acquittal or a new trial." *State v. Reddy*, 192 Ohio App.3d 108, 119, 2010-Ohio-5759, 948 N.E.2d 454 (8th Dist.), citing *State v. Davis*, 8 Ohio App.3d 205, 207, 456 N.E.2d 1256 (8th Dist.1982).

{¶ 33} In the present instance, although the state failed to introduce sufficient evidence of serious physical harm in connection with both of appellant's convictions for felonious assault we find that the record contains sufficient evidence to support convictions for simple assault in violation of R.C. 2903.13(A) in both instances.

{¶ 34} Simple assault, in violation of R.C. 2903.13(A), is a lesser-included offense of felonious assault. *State v. Caster*, 8th Dist. No. 87783, 2006-Ohio-6594, 2006-WL 3634857, at ¶ 6. We, therefore, modify Addison's convictions of felonious assault to convictions of simple assault in violation of R.C. 2903.13(A), and remand for resentencing.

{¶ 35} Based on the foregoing, we sustain Addison's first assignment of error, rendering his second and third assignments of error moot.

{¶ 36} In his fourth assignment of error, appellant argues that he was denied a fair trial when the state improperly impeached its own witnesses in violation of Evid.R. 607 and that the state bolstered that error when it was argued to the jury that those statements were substantive evidence.

{¶ 37} In this case, on redirect examination, the state provided to witness DeShawn Lee, the written statement that he had provided to the police on July 15, 2010. Without objection, the state was permitted to question DeShawn regarding the contents of this statement, which ostensibly was provided to him to refresh his recollection.

{¶ 38} The state, however, failed to lay the proper foundation that would allow this line of questioning.

{¶ 39} Although DeShawn responded that he did not necessarily remember everything that he reported to the police, he was never asked if reviewing his statement would refresh his recollection and, subsequently, if his recollection was refreshed after reading the statement. Therefore, the use of DeShawn's statement was inappropriate if used as the state now claims to refresh his recollection.

{¶ 40} After the witness reviewed his statement, the state propounded to him leading questions. However, the defense failed to object at trial to the use of DeShawn's written statements or to the leading questions asked of him.

**{¶ 41}** As to witness Lewis, the state, again without objection and as it did with DeShawn, posed leading questions.

> Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony. *State v. Johnson*, 8th Dist. No. 82340, 2003-Ohio-6634, 2003 WL 22922964.

**{¶ 42}** It is wholly within the discretion of the trial court to permit the state to ask leading questions of its own witnesses. As stated in *State v. Lewis*, 4 Ohio App.3d 275, 448 N.E.2d 487 (3d Dist.1982), "the exception 'except as may be necessary to develop his testimony' is quite broad and places the limits upon the use of leading questions on direct examination within the sound judicial discretion of the trial court."

**{¶ 43}** In this case, we cannot say that appellant was prejudiced by the admission of the evidence. Although many of the state's questions were improper, they did not rise to the level of reversible error.

**{¶ 44}** Appellant's fourth assignment of error is overruled.

**{¶ 45}** Addison's judgment of conviction and sentence is vacated.

**{¶ 46}** Addison's convictions for felonious assault are reversed and modified to convictions for simple assault in violation of R.C. 2903.13(A). This cause is remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant recover of said appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the

lower court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to

Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN A. GALLAGHER, JUDGE

JAMES J. SWEENEY, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR

**Appendix**

**Assignments of Error:**

**"I.   The State failed to present sufficient evidence to sustain Appellant's conviction.**

**II.   The Appellant was denied his constitutional right to confront his accuser and challenge the witness against him.**

**III.   The Appellant's convictions were against the manifest weight of the evidence.**

**IV.   The Appellant was denied a fair trial when the State improperly impeached its own witnesses in violation of Evid.R. 607 and argued that the statements were substantive evidence."**