[Cite as *State v. Hopkins*, 2018-Ohio-373.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | |
| | ) | |
|     PLAINTIFF-APPELLEE | ) | |
| | ) | CASE NO. 15 MA 0224 |
| VS. | ) | |
| | ) | OPINION |
| ANTHONY HOPKINS | ) | |
| | ) | |
|     DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:      Criminal Appeal from the Court of Common Pleas, of Mahoning County, Ohio
Case No. 14 CR 996

JUDGMENT:      Conviction affirmed as modified. Remanded for sentencing.

APPEARANCES:
For Plaintiff-Appellee      Attorney Paul Gains
Mahoning County Prosecutor
Attorney Ralph Rivera
Assistant Prosecutor
21 West Boardman Street, 6th Floor
Youngstown, Ohio 44503-1426

For Defendant-Appellant      Attorney Louis DeFabio
4822 Market Street, Suite 220
Boardman, Ohio 44512

JUDGES:

Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Carol Ann Robb

Dated: January 26, 2018

DeGENARO, J.

**{¶1}** Defendant-Appellant, Anthony Hopkins, appeals his aggravated murder conviction and sentence, arguing it was not supported by sufficient evidence and was against the manifest weight of the evidence because the State did not prove prior calculation and design. He further asserts he received ineffective assistance of counsel. As Hopkins' ineffective assistance claim is based upon invited error, it is meritless. However, the state failed to meet its burden of proof regarding the element of prior calculation and design. Accordingly, Hopkins' conviction for aggravated murder is modified to a conviction for murder, pursuant to R.C. 2903.02, and this matter is remanded for sentencing on Hopkins' modified conviction.

## Facts and Procedural History

**{¶2}** Hopkins was indicted on three counts: aggravated murder and an accompanying firearm specification, tampering with evidence and intimidation. The following facts were presented during the course of a jury trial.

**{¶3}** Randall Miller testified that he and Hopkins were riding around in Miller's 2002 Cadillac. Miller stopped to see Frank Brown who was standing outside of his house. Hopkins remained in the Cadillac while Miller was outside talking to Brown. Miller suggested that they get a drink later that evening and gave Brown his cell number before leaving.

**{¶4}** Miller and Hopkins parted ways shortly thereafter, and Miller went home and fell asleep. Around 10:00 p.m., Miller's wife woke him up because his cell phone kept ringing. Miller called the number back and it was Brown who asked Miller to go out. About 45-60 minutes later Miller picked up Brown and drove him to a girl's house. Miller stayed in the car while Brown went inside; they were there for 15 to 20 minutes. From there, Miller and Brown went to the Southern Tavern.

**{¶5}** Miller stated that Brown had a weapon, which he left in Miller's car and went into the bar while Miller stayed outside; at that point Hopkins arrived. Brown came back out and asked Miller to unlock the car so Brown could retrieve his weapon to take into the bar. Miller went back into the bar with Brown while Hopkins left. Miller testified that he did not tell Hopkins that they were going to the Southern Tavern.

Before leaving the Southern Tavern Miller told Hopkins that he probably would go to Déjà Vu, another bar.

{¶6} Between 12:30 a.m. and 1:00 a.m., Miller and Brown left Southern Tavern and went to Déjà Vu. Miller and Brown sat down at a table and Hopkins joined them. According to surveillance video, after approximately 25 minutes Miller left the table and Hopkins and Brown were left alone for about 7 minutes. All three men stayed until closing and congregated in the parking lot near Miller's car after they exited the bar. In the parking lot, Brown walked over to speak to another man who had all of his car doors open and was playing music loudly. After about 5 to 10 minutes Brown returned to the group.

{¶7} The three then got into Miller's Cadillac and left. Miller drove, Brown sat in the front passenger's seat, and Hopkins sat in the backseat behind Brown. While Miller was drivng, Brown put on a pair of sunglasses saying he "clipped that n*****." Miller testified that Brown and Hopkins started to "bicker back and forth" about Brown always stealing and Hopkins always being broke. Hopkins then told Brown that if he stole from him he would "get f***ed up." Brown responded, "You ain't got nothing for me to steal, n*****, like f*** you, n*****." Miller stated that he told both to chill out.

{¶8} Miller testified that Brown took the glasses off, put them in his pocket, pulled out his weapon and said to Hopkins, "N*****, as a matter of fact, f*** with me, n*****, you'll get f***ed up." Brown then set the weapon on his lap; he never pointed it at Hopkins. "Maybe about a minute later," Miller heard a "loud bang, bang right in my ear." He testified to hearing only one shot.

{¶9} Miller pulled the car over, and Hopkins pulled Brown's body out of the car and got back inside. Hopkins then pointed his gun at Miller and stated, "N*****, I ain't leaving no witnesses, so what you gonna do?" Miller responded, "N*****, I ain't no witness; I ain't seen nothing." Hopkins threw his gun out the window on their way to Miller's house. Miller described Hopkins' gun as a semiautomatic, "maybe a .380 or like a 9mm or something like that."

{¶10} When they arrived back at Miller's house, Hopkins began to clean the Cadillac inside Miller's garage. Hopkins told Miller to sweep up the glass. After Hopkins cleaned the Cadillac, Miller used his wife's vehicle to drive Hopkins home. Hopkins took all the rags and gloves used to cleaned the car with him.

{¶11} Two days later, Hopkins and Miller drove to North Canton for a close friend of Hopkins' to install a replacement window in Miller's Cadillac.

{¶12} In addition to the three charges contained in Hopkins' indictment, the trial court also gave a jury instruction for murder. During the course of deliberations, a juror indicated they were having trouble deliberating, and was removed at the request of defense counsel without the trial judge questioning the juror. The jury convicted Hopkins of aggravated murder and the accompanying firearm specification, tampering with evidence and intimidation. The trial court ordered all sentences to be served consecutively, imposing an aggregate sentence of 32 1/2 years to life.

## Sufficiency & Manifest Weight

{¶13} In his first of two assignments of error, Hopkins asserts:

> The jury's verdict of Guilty as to the Aggravated Murder charge was not supported by sufficient evidence and was against the manifest weight of the evidence.

{¶14} Sufficiency and manifest weight are "quantitatively and qualitatively different." *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. Sufficiency is a test of adequacy and whether the state met its burden of production. *State v. Fullerman*, 7th Dist. No. 99 CA 0314, 2001-Ohio-3969, *4. Said differently, whether there is sufficient evidence to send the case to the jury or support a verdict as a matter of law. *Thompkins.* at 386. Whether the evidence is legally sufficient is a question of law. *State v. Robinson*, 162 Ohio St. 486, 124 N.E.2d 148 (1955). The appellate court considers whether the trier of fact could find the essential elements of the offense were proven beyond a reasonable doubt after construing the evidence in a light most favorable to the state. *State v.*

*May*, 2011-Ohio-6637, 970 N.E.2d 1029, ¶ 58 (7th Dist.)

**{¶15}** Conversely, weight of the evidence measures whether the state has met its burden of persuasion, and thus "concerns the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other." (Emphasis sic.) *Thompkins* at 387. A conviction will only be reversed as against the manifest weight of the evidence if the fact-finder clearly lost its way, in order to correct a manifest miscarriage of justice. *Id.* This is because the trier of fact is in a better position to determine credibility issues, having viewed the demeanor, voice inflections and gestures of the witnesses. *State v. Hill*, 75 Ohio St.3d 195, 204, 661 N.E.2d 1068 (1996); *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). However, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. No. 99 CA 149, 2002-Ohio-1152, *2, citing *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist.1999).

**{¶16}** A court must order the entry of a judgment of acquittal on a charged offense if the evidence is insufficient to sustain a conviction on the offense. Crim.R. 29(A). However, "a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman*, 55 Ohio St.2d 261, 381 N.E.2d 184 (1978), syllabus. Thus, a motion for acquittal tests the sufficiency of the evidence. *State v. Tatum*, 3d Dist. No. 13–10–18, 2011–Ohio–3005, ¶ 43, citing *State v. Miley*, 114 Ohio App.3d 738, 742, 684 N.E.2d 102 (4th Dist.1996).

**{¶17}** The scope of Hopkins' appeal is very narrow. He does not contest any other convictions, nor challenge any other elements of aggravated murder. Hopkins does not challenge the trial court's decision to give the jury a murder instruction; he concedes the shooting. Hopkins' sole argument is that because he shot Brown immediately after a heated argument, the State failed to prove the element of prior

calculation and design. Thus, the aggravated murder conviction is not supported by sufficient evidence.

**{¶18}** Hopkins was convicted of aggravated murder: "No person shall purposely, and with prior calculation and design, cause the death of another [.]" R.C. 2903.01(A). Hopkins argues that the State failed to demonstrate that he acted with prior calculation and design because his decision to shoot was the product of instantaneous deliberation at the end of a heated argument.

**{¶19}** The Ohio Supreme Court held prior calculation and design is established when "the purpose to cause the death was reached by a definite process of reasoning in advance of the homicide, which process of reasoning must have included a mental plan involving studied consideration of the method and the means and/or instrument with which to cause the death of another." *State v. Coley*, 93 Ohio St.3d 253, 267, 2001-Ohio-1340, 754 N.E.2d 1129.

**{¶20}** The Eighth District recently discussed prior calculation and design:

Furthermore, the phrase indicates " 'studied care in planning or analyzing the means of the crime as well as a scheme encompassing the death of the victim.' " *State v. Powell*, 8th Dist. Cuyahoga No. 99386, 2014-Ohio-2048, 2014 WL 2019258, ¶ 11, quoting *State v. Taylor*, 78 Ohio St.3d 15, 19, 676 N.E.2d 82 (1997). Instantaneous deliberation is not sufficient to show prior calculation and design—the defendant must act consistent with "a scheme designed to implement the calculated decision to kill." *State v. Cotton*, 56 Ohio St.2d 8, 11, 381 N.E.2d 190 (1978).

The Ohio Supreme Court has considered the following three factors in determining whether a defendant acted with prior calculation and design:

(1) Did the accused and the victim know each other, and if so, was that

relationship strained? (2) Did the accused give thought or preparation to choosing the murder weapon or murder site? and (3) Was the act drawn out or an almost spontaneous eruption of events?

*Taylor* at 19, 676 N.E.2d 82; *State v. Shabazz*, 8th Dist. Cuyahoga No. 100021, 2014-Ohio-1828, 2014 WL 1775686, ¶ 26.

*State v. Nelson*, 2017-Ohio-5568, __ N.E.3d ___, ¶ 29-30 (8th Dist.).

**{¶21}** Looking at the *Taylor* factors, Hopkins and Brown knew each other but there was no evidence of a strained relationship prior to the argument in the car. There was no evidence that Hopkins gave any thought or preparation to choosing the murder weapon or murder site. More important, as held in *Cotton,* something more than instantaneous deliberation must be proven beyond a reasonable doubt to constitute prior calculation and design. Hopkins shot Brown immediately after a heated argument in which Brown pulled out his own weapon. As the State failed to establish the element of prior calculation and design, Hopkins' conviction for aggravated murder is not supported by sufficient evidence. Accordingly, his first assignment of error is meritorious.

**{¶22}** Though the record does not support a conviction for aggravated murder due to the absence of prior calculation and design, it does support a conviction for murder. "No person shall purposely cause the death of another." R.C. 2903.02(A). "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A).

**{¶23}** Circumstantial evidence can be used to establish purpose or intent. *State v. Nicely*, 39 Ohio St.3d 147, 529 N.E.2d 1236 (1988). Intent may be inferred from all of the surrounding circumstances, such as the instrument used to produce death and the manner of inflicting the fatal wound. *State v. Robinson*, 161 Ohio St. 213, 53 O.O. 96, 118 N.E.2d 517 (1954), paragraph five of the syllabus. Here,

Hopkins shot Brown with a firearm, an inherently dangerous instrument which is likely to produce death.

**{¶24}** "It is well established that this court has the authority to reduce a conviction to that of a lesser included offense when it is supported by the record, rather than ordering an acquittal or a new trial." *State v. Reddy*, 192 Ohio App.3d 108, 2010-Ohio-5759, 948 N.E.2d 454, ¶ 35 (internal citations omitted). In *Reddy,* the Eighth District held the state failed to prove the prior calculation and design element of aggravated murder, but did prove the elements of the lesser included offense of murder. As a result, Reddy's aggravated murder conviction was modified to a murder conviction and the case remanded for the trial court to impose a sentence on the modified conviction. Accordingly, we modify Hopkins conviction to find him guilty of one count of murder.

### Ineffective Assistance

**{¶25}** In his second of two assignments of error, Hopkins asserts:

The Appellant received ineffective assistance of trial counsel when his trial attorney failed to request that the trial court conduct a hearing and interview a juror before removing the juror during deliberations.

**{¶26}** To prove ineffective assistance of counsel, the defendant must satisfy a two-prong test; that counsel's performance has fallen below an objective standard of reasonable representation, and that he was prejudiced by counsel's performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. To demonstrate prejudice, the defendant must prove that, but for counsel's errors, the result of the trial would have been different. *Id.*, paragraph three of the syllabus. In Ohio, a properly licensed attorney is presumed to be competent and the burden is on the defendant to prove otherwise. *State v. Hamblin*, 37 Ohio St.3d 153, 155, 524 N.E.2d 476 (1988).

**{¶27}** Hopkins argues that his trial counsel was ineffective because he failed

to request that the trial court conduct a hearing and interview a juror before the juror was removed. The State responds that even if this was an error, it was invited by counsel.

**{¶28}** The Fourth District recently explained the invited error doctrine in:

Under the invited error doctrine, "a party is not entitled to take advantage of an error that he himself invited or induced." *State v. Doss*, 8th Dist. Cuyahoga No. 84433, 2005-Ohio-775, 2005 WL 433531, ¶ 5, quoting *State ex rel. Kline v. Carroll*, 96 Ohio St.3d 404, 2002-Ohio-4849, 775 N.E.2d 517, ¶ 27; *State ex rel. V. Cos. v. Marshall*, 81 Ohio St.3d 467, 471, 692 N.E.2d 198 (1998). The doctrine precludes a defendant from making "an affirmative and apparent strategic decision at trial" and then complaining on appeal that the result of that decision constitutes reversible error. *Doss* at ¶ 7, quoting *United States v. Jernigan,* 341 F.3d 1273, 1290 (11th Cir.2003). The doctrine applies when defense counsel is "actively responsible" for the trial court's error. *State v. Campbell*, 90 Ohio St.3d 320, 324, 738 N.E.2d 1178 (2000). Furthermore, in *Jenkins, supra*, at fn. 2, we observed that some courts refuse to recognize an ineffective assistance of counsel claim when the allegation is that trial counsel invited the alleged error.

*State v. Jarrell,* 4th Dist. No. 15CA8, 2017-Ohio-520, ¶ 54

**{¶29}** Here, after concerns over a juror arose, the following exchange took place between the trial court and counsel:

**THE COURT:** We are back in chambers on the record with counsel. I took the lunch hour to take a look at Revised Code 2945.29, Criminal Rule 24(G), with regard to replacing jurors. After looking at the statute and the case law and the rule, I believe that what needs to be determined is whether there have been facts presented which convince

me that the juror's ability to perform his or her duties is impaired. My concern is that right now I have a very, very, very strong belief that we are, in fact, talking about Juror No. 11. An additional fact that came to light after the lunch hour is they were all coming back, and she was sitting outside in the hallway by herself. However, that is not determinative. So we can approach it one of two ways. I can talk to her and confirm that suspicion. You had -- defense counsel had indicated earlier you did not want that to happen?

**DEFENSE COUNSEL**: Let's just boot her.

**THE COURT:** Okay. Just so that you know, the other part of my research tells me that if I in fact boot her, the fact that I booted her without additional information cannot be raised as an error on appeal. And you're agreeing to –

**DEFENSE COUNSEL:** I'm comfortable based on the status of the record that we're talking about the same person.

**{¶30}** This is invited error. The trial court indicated the proper procedure for handling the juror in question and the ramifications on appeal if that procedure was not followed. Defense counsel specifically requested that the trial court dismiss the juror without inquiry, and that he was comfortable with the consequences on appeal as the result of the trial court acting in conformity with his request. Thus, Hopkin's second assigned error is meritless.

**{¶31}** In sum, Hopkins' second assignment of error is meritless as invited error. However, as the State failed to prove prior calculation and design, Hopkins' first assignment of error is meritorious. Accordingly, Hopkins' sentence for aggravated murder is modified to a conviction for murder, pursuant to R.C. 2903.02, and this

matter is remanded for sentencing on his modified conviction.

Donofrio, J., concurs.

Robb, P. J., concurs.