[Cite as *State v. Wieder*, 2025-Ohio-2128.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

BRITTNEY WIEDER,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 24 MA 0107

---

Criminal Appeal from the
Mahoning County Court No. 2 of Mahoning County, Ohio
Case No. 2023 CR B 00030 BDM

**BEFORE:**
Katelyn Dickey, Carol Ann Robb, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Lynn Maro*, Mahoning County Prosecutor*, Atty. Ralph M. Rivera* and *Atty. Kristie Weibling*, Assistant Prosecuting Attorneys, for Plaintiff-Appellee and

*Atty. Charles A.J. Strader*, Attorney Charles Strader, LLC, for Defendant-Appellant.

Dated: June 16, 2025

**DICKEY, J.**

{¶1}     Appellant, Brittney Wieder, appeals her conviction for one count of theft in violation of R.C. 2913.02(A)(2), a misdemeanor of the first degree, following a bench trial in Mahoning County Court No. 2.  Appellant solicited $340.80 of services from a local hair salon, but was unable to pay for the services through an online payment application when the services were rendered.  The salon owner agreed to allow Appellant to depart from the salon to retrieve an alternative form of payment, then provided Appellant a few additional days to allow her to collect the funds to pay the salon bill.  When the salon owner withdrew her consent to any additional delay in payment, Appellant did not pay the bill.

{¶2}     In this appeal, Appellant contends the trial court erred in overruling her Criminal Rule 29 motion, the evidence was insufficient to support her conviction, and the verdict is against the manifest weight of the evidence.  She argues the state failed to prove the mens rea element of the crime, that is, she knowingly obtained the services with the purpose of depriving the owner of the salon of the services at the time the services were rendered.  Based on the series of disingenuous stories told by Appellant regarding her ability to pay at the time services were rendered and in the days following the transaction, we find the trier of fact could have found she intended to deprive the salon owner of the services when the salon owner revoked her consent to any additional delay in payment.  Accordingly, Appellant's conviction is affirmed.

## LAW

{¶3}     R.C. 2913.02, captioned "Theft," reads in its entirety:

(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

. . .

(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;

Case No. 24 MA 0107

. . .

(B)(1) Whoever violates this section is guilty of theft.

**{¶4}** "A person acts purposely when it is the person's specific intention to cause a certain result." R.C. 2901.22(A). Circumstantial evidence can be used to establish purpose or intent. *State v. Hopkins*, 2018-Ohio-373, ¶ 23 (7th Dist.), citing *State v. Nicely*, 39 Ohio St.3d 147 (1988).

**{¶5}** "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exists." R.C. 2901.22(B).

**{¶6}** To "deprive" for the purposes of the theft statute means to "[a]ccept, use, or appropriate money, property or services, with purpose not to give proper consideration in return for the money, property, or services, and without reasonable justification or excuse for not giving proper consideration." R.C. 2913.01(C)(3). " 'Under R.C. 2913.02(A)(2), the basic elements of the offense must still coincide, but conversion or embezzlement now constitutes theft, since the section defines theft as exerting control (as opposed to initially gaining control over property or services) beyond the scope of the owner's consent, and with purpose to deprive the owner of the same.' " *State v. Henderson*, 2024-Ohio-2312, ¶ 31 (1st Dist.), quoting 1974 Committee Comment to R.C. 2913.02. In other words, a defendant's failure to compensate a service provider is converted from a civil matter into both a civil and a criminal matter where the state can establish beyond a reasonable doubt that the defendant had the intent to deprive the provider of the services when the provider revoked her consent to any additional delay in payment.

## FACTS AND PROCEDURAL HISTORY

**{¶7}** Four witnesses offered testimony at the bench trial. Sara Gratz Killa, the owner and a stylist at TheFixx, a Boardman hair salon; Abby Kellgren, a stylist at TheFixx; and Bureau of Criminal Investigation Agent Chad Doran, the Detective-Sergeant with the Boardman Township Police assigned to investigate Killa's allegations, testified on behalf

of the State.  Appellant testified on her own behalf and was the sole witness for the defense.

**{¶8}**  According to Killa, she posted inspirational pictures on her Instagram account, including "things [she] would like to do fashion color-wise for [her] portfolio." (Trial Tr., p. 10.) In an effort to attract customers interested in the posted looks, she offered her services at a discounted price.

**{¶9}**  Appellant contacted Killa online, then they engaged in a lengthy consultation via telephone regarding Appellant's plan for her hair.  Appellant sent Killa pictures of Appellant's then-current hair and "inspo pictures," and the two discussed "roundabout estimates of what it would cost." (*Id.*)

**{¶10}** When Appellant arrived for her appointment on December 28, 2022 (Wednesday), she had "long, like, grown-out, blond balayage hair."  (*Id.*, p. 10-11.)  Her natural color was "about a level four brown." (*Id.*, p. 11.)  To achieve Appellant's desired color intensity, Killa "needed to bring [Appellant] up to around a level nine, nine, ten, to put the pastels on for them to be vibrant." (*Id.*)

**{¶11}**  In the six hours that followed, Killa incrementally bleached Appellant's hair, paying particular attention to Appellant's "mids and ends," which were already lightened. Then, Killa added color.  (*Id.*) Appellant's hair was quite thick and required almost an entire tub of bleach.  Kellgren, who was present when Appellant's services were complete, testified Appellant "loved" her hair. (*Id.*, p. 41.)

**{¶12}**  Services rendered totaled $340.80. Appellant attempted to pay thorough an online application called "Afterpay."  Afterpay is a third-party lender that allows subscribers to divide charges into four equal installments, with the initial installment due the day of the charge and the remaining installments due every two weeks thereafter.

**{¶13}** Killa testified "tons" of her clients use Afterpay. However, Appellant was unable to process her payment through the online application.

**{¶14}** Appellant asked Killa if Appellant could leave the salon and return home to retrieve "her other card or something" to pay for Killa's services. (*Id.*, p. 36.)  Kellgren likewise testified Appellant requested the opportunity to return home to "get a different card." (*Id.*, p. 41.)

{¶15} Killa agreed to Appellant's request because Appellant was a client of another stylist at the salon, and Killa was aware Appellant had previously paid her salon bill in full on the day the services were rendered.  According to Killa, Appellant did not express any dissatisfaction with her hair.

{¶16} Appellant did not return with payment.  After a few hours passed, Killa sent a text message to Appellant requesting an update. The text message chain was admitted into evidence at the bench trial, and contains time stamps for the messages but not date stamps.  Contrary to her assertion at the salon that she wanted to return to her residence to retrieve another form of payment, Appellant stated in a text message at 8:55 p.m. that she had opened three Afterpay accounts but was still unable to process the payment. She apologized and explained she had been working continuously since she left the salon to pay the bill.

{¶17} Killa acknowledged the time of year and the fact that Appellant had small children, but insisted payment was due as soon as possible.  Killa suggested Appellant borrow money from a relative or friend.  Appellant responded her sister was able to deposit money in her bank account the following day, December 29, 2022 (Thursday), and "[Appellant's sister] said [Appellant] can use her card." (*Id.*, p. 19.)  However, Appellant did not pay the bill, contact Killa, or respond to a text message sent by Killa on December 29, 2022.

{¶18} Killa sent another text message on December 30, 2022 (Friday). When Appellant responded, she explained she was at work when she received Killa's previous text message and could not respond.

{¶19} Appellant asked for a few additional days to pay the bill.  Killa testified she sympathized with Appellant's situation, but the bill was due when services were rendered. Because several days had passed, and Appellant had failed to maintain consistent contact with Killa, Killa informed Appellant she was going to file a police report accusing Appellant of theft.

{¶20} According to Killa, Appellant responded:

> Please do not go file.  I have been trying everything.  I have that on my card right now.  I can even Cash App you.  I get paid next week.  I will give you the rest of what I owe instead of dealing with AfterPay.

(*Id.*, p. 20.)

{¶21} Killa replied, "next week is too far out to pay your balance." (*Id.*, p. 21.) Killa explained she had already "bent her policy" but she was unable to wait another week to be paid. She demanded payment by 5:00 p.m. on the following day.

{¶22} Killa never received payment from Appellant, even after she extended the due date by twenty-four hours. She testified she filed a police report ten days after services were rendered, however, Agent Doran testified the police report was dated December 30, 2022.

{¶23} In an effort to locate Appellant, Agent Doran called the telephone number associated with the transaction, which had an outgoing voicemail for a man named "Justin." Agent Doran performed an Accurint records search and left a voicemail with his contact information at a second telephone number associated with Appellant. He then left the same message on the voicemail of the first telephone number.

{¶24} Agent Doran visited an address "on file" for Appellant only to discover Appellant was a prior tenant. Agent Doran then visited the address on Appellant's Ohio driver's license, where a male juvenile told Agent Doran that Appellant was at the store. Agent Doran left his business card.

{¶25} As of January 9, 2023 (Monday – twelve days after services were rendered), Appellant had not contacted Agent Doran. He contacted Killa, who reported she had not received payment, so Agent Doran signed the criminal complaint. Killa's reference to filing the police report ten days after the incident may refer to the filing of the criminal complaint. Killa agreed to accept restitution in lieu of criminal prosecution.

{¶26} At the conclusion of the state's case, defense counsel made an oral motion for acquittal pursuant to Crim. R. 29. Defense counsel argued the state failed to establish Appellant's intent to deprive Killa of the services at the time the services were rendered. Because Killa testified Appellant attempted to pay using Afterpay, but was prevented from completing the transaction due to technological difficulties, defense counsel argued the state had essentially conceded Appellant's intent to pay the bill on December 28, 2022. The state argued Appellant's difficulty with Afterpay was the first in a series of ultimately fictionalized stories told by Appellant, including: (1) Appellant returning home to get another card, when Appellant later admitted she went home and created three other

Afterpay accounts; and (2) Appellant's sister depositing money into her account the following day in order to facilitate payment, which never happened. The trial court overruled the Rule 29 motion without explanation.

**{¶27}** According to Appellant's testimony, she was a client at the salon and knew Killa "did good hair. So [Appellant] went and asked [Killa] how much [the color] would be." (*Id.*, p. 61.) Killa quoted a flat rate of $220, and offered no discount.

**{¶28}** Appellant sent Killa a screenshot of Appellant's Afterpay account and what Appellant "was accredited for" on the application. Appellant asked Killa if she preferred payment before or after service, and Killa responded it was Appellant's choice.

**{¶29}** Appellant engaged transportation to and from the salon through the Uber application. She testified that when she arrived for her appointment, there was a water problem at the salon caused by work being performed on the street. Appellant returned home, but received a call twenty minutes later from Killa informing Appellant that the water at the salon had been restored.

**{¶30}** Appellant testified Killa did not inform her that the cost of the service could increase based on the amount of product used or give her an itemized bill. Appellant specifically testified she "did not have the full $350 because that is not what [she] was quoted. . . So [she] was trying to do Afterpay." (*Id.* at p. 64.) The foregoing testimony, which suggests Appellant had $220 but was forced to use Afterpay due to the price increase, was at odds with her prior testimony that she intended to use Afterpay prior to the appointment.

**{¶31}** Embarrassed by the circumstances, Appellant sent Killa a text message while Appellant was still at the salon asking "if it was okay if [she] left and tried to get the money off [her] card or money on a card so [she could] do another Afterpay." (*Id.*) Killa agreed.

**{¶32}** According to Appellant's testimony, she spent the next five days attempting to find money to pay the bill. When asked by her counsel, "[d]id you ever at one time – this was about five days later – tell [Killa] that you could now pay," Appellant responded, "[y]es." However, Appellant testified Killa refused to accept payment because the balance was past due. (*Id.*, p. 65.) The foregoing exchange was not included in the text message chain admitted into evidence, but may have been a verbal exchange.

**{¶33}** When Appellant was asked whether she was satisfied with the services provided by Killa, Appellant responded, "I had to be." (*Id.*, p. 71.) When asked why she would pay for services that did not meet her expectations, Appellant responded, "I'm not that kind of person." (*Id.*)

**{¶34}** Appellant testified her hair color was not as vibrant as she had requested, so she completed her color at another salon on March 11, 2023, which cost an additional $160, plus a $20 tip. Appellant was asked during cross-examination to explain the reason she waited roughly two and a half months to "fix" her color, if she was dissatisfied with it on December 28, 2022. Appellant responded, "Christmas, and then I just got evicted from my house because of relationship problems. I had to move. I had to find somewhere to go. I am a single – I was a single mother." (*Id.*, p. 72.)

**{¶35}** On cross-examination, Appellant conceded Killa told Appellant the price was likely to increase due to the amount of product required to bleach her hair, but Appellant testified the disclosure was made during the bleaching process. Appellant further testified she did not refuse to pay the additional $120 because she understood more product than estimated was required to complete the job.

**{¶36}** The state asked, "[n]ow, did you testify earlier that you had $220 set aside to pay for the service on the 28th of December?" Appellant responded, "Yes . . . She wasn't accepting that." (*Id.*, p. 72.) On re-direct, defense counsel clarified, "[s]o to answer the [state's] question, the $220 went to other things you had to pay?" Appellant responded, "Yeah." (*Id.*, p. 74)

**{¶37}** The trial court found Appellant guilty of theft. The trial court imposed a ninety-day jail sentence, which was suspended, twelve months of community control, restitution in the amount of $340 and a fine in the amount of $100 to be paid in sixty days, and one day of community service. The trial court stayed the sentence pending this timely-filed appeal.

## ANALYSIS

**{¶38}** Appellant advances four assignments of error. They are grouped together and taken out of order for the purposes of ease of analysis and judicial economy.

Case No. 24 MA 0107

## ASSIGNMENT OF ERROR NO. 1

**THE COURT COMMITTED REVERSIBLE ERROR WHEN IT DENIED [APPELLANT'S] MOTION FOR ACQUITTAL PURSUANT TO CRIMINAL RULE 29(A) AT THE CONCLUSION OF THE CASE BY THE STATE OF OHIO.**

## ASSIGNMENT OF ERROR NO. 4

**THE CONVICTION OF [APPELLANT] WAS AGAINST THE SUFFICIENCY OF THE EVIDENCE, AND, AS A RESULT, THEREOF, MUST BE REVERSED.**

## ASSIGNMENT OF ERROR NO. 2

**THE COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO IDENTIFY THE CLAIM FILED BY THE STATE OF OHIO AS A CIVIL MATTER, BREACH OF CONTRACT, RATHER THAN A CRIMINAL MATTER.**

{¶39} Each of the foregoing assignments of error is predicated upon Appellant's argument that the state failed to demonstrate she intended to deprive Killa of the services at the time the services were rendered. However, Appellant was convicted of theft in violation of R.C. 2913.02(A)(2), that is, Appellant deprived Killa of the services beyond the scope of Killa's express or implied consent. Consequently, we must determine whether there is sufficient evidence in the record to establish Appellant purposefully deprived Killa of the value of the salon services when Killa withdrew her consent to any additional delay in payment on December 30, 2022.

{¶40} A Rule 29(A) motion tests the sufficiency of the evidence. *State v. Fant*, 2016-Ohio-7429, ¶ 14 (7th Dist.) An appellate court reviews a denial of a motion for acquittal using the same standard that an appellate court uses to review a sufficiency-of-the-evidence claim. *State v. Carter*, 72 Ohio St.3d 545, 553 (1995).

{¶41} "A challenge to the sufficiency of the evidence tests whether the state has properly discharged its burden to produce competent, probative, evidence on each

element of the offense charged." *State v. Petefish*, 2011-Ohio-6367, ¶ 16 (7th Dist.). Simply stated, sufficiency is a test of adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

**{¶42}** "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *Id.* "In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Smith*, 80 Ohio St.3d 89, 113 (1997) (internal citations omitted). The Double Jeopardy Clause bars retrial after a reversal on grounds of sufficiency. *Id.* at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 41 (1982).

**{¶43}** Citing *State v. Ames*, 2009-Ohio-3509 (2d Dist.), Appellant contends there is no evidence in the record to establish she intended to deprive Killa and TheFixx of payment when the services were rendered. In that case, Ames testified he authorized Bubeck to run a diagnostic check on his vehicle to determine the required repairs. Instead, Bubeck performed the repair work and demanded payment from Ames in the amount of $434.66 in order for Ames to retrieve his vehicle.

**{¶44}** Ames' nephew removed the vehicle from the repair shop without Bubeck's consent. Bubeck never received payment and Ames was charged with theft in violation of R.C. 2913.02(A)(1) (obtaining control without consent).

**{¶45}** The Second District reversed Ames' conviction based on the common law pertaining to liens and the Ohio Consumer Sales Practice Act ("CSPA"). The Second District reasoned that Bubeck would have had a superior possessory right to the vehicle, but for his failure to provide a written estimate of the cost of repairs to Ames, as required by CSPA.

**{¶46}** Appellant cites *Ames* for the following proposition of law:

> The state prosecuted this case as one involving the theft of services without consent. The state's theory is that Ames "deprived" Bubeck of the value of his services by taking back Ames's own truck, which Bubeck possessed, at most, as security for the payment of those services. If this case had been charged as theft of services by deception, under R.C. 2913.02(A)(3), and if the state had proved that Ames never had the intent

to pay for services that he had ordered, the result of this appeal might be different.

In this case, Ames allegedly obtained control of the truck without the consent of the possessor, Bubeck – a possessor who had no lien or interest beyond a mere bailment. Even if we were to accept the dissenting opinion in [*State v.*] *Vitale*, 96 Ohio App.3d 695, 645 N.E.2d 1277 [(8th Dist. 1994)], and find that this possession was sufficient to make Bubeck an "owner" under R.C. 2913.01(D), absent proof that the repair services had been accepted by Ames with the purpose not to pay for them, and without proper justification for not paying, there is insufficient evidence to convict Ames of theft of services without consent.

*Id.* at ¶ 20-21.

**{¶47}** Appellant's reliance on *Ames* is misplaced. *Ames* addresses the elements of the crimes of theft without consent of the owner (R.C. 2913.02(A)(1)) and theft by deception (R.C. 2913.02(A)(3)). As previously stated, theft beyond the scope of consent requires evidence of intent to deprive at the time that consent is withdrawn.

**{¶48}** Next, Appellant correctly argues nonpayment of a bill for services alone does not constitute theft. However, Appellant's pattern of avoidance coupled with her disingenuous statements regarding her ability to pay when the services were rendered and in the following days, taken in a light most favorable to the state, could convince a rational trier of fact that Appellant intended to purposefully deprive Killa of the salon services when Killa revoked her consent to any additional delay in payment on December 30, 2022.

**{¶49}** Immediately after the coloring service was complete, Appellant blamed a technological problem for her inability to pay Killa through Afterpay. Rather than calling Afterpay customer service to resolve the problem, Appellant asked to leave the salon to retrieve another form of payment from her home. Appellant never returned to the salon nor contacted Killa. When Killa contacted Appellant, Appellant told Killa that she had spent the previous hours attempting to open three new Afterpay accounts, rather than

retrieving another form of payment for the salon services. When Killa suggested Appellant borrow the money from a family member or friend, Appellant said her sister had offered to put money in her bank account the following day so Appellant could pay the salon bill. However, Appellant did not communicate with Killa the following day, despite Killa's consistent efforts to collect the amount due. On December 30, 2022, Appellant admitted she could not pay the bill and asked Killa to wait another week until Appellant received her paycheck. Although Killa refused to wait another week for payment, she did provide Appellant with an additional twenty-four hours to pay the outstanding bill, which Appellant never paid. In addition, Appellant failed to contact Agent Doran in the week following his visit to her home. Based on the foregoing evidence, we find the trial court did not err in overruling Appellant's Rule 29 motion as the state offered sufficient evidence with respect to the intent element of the crime, that is, Appellant purposefully deprived Killa of the salon services when Killa revoked her consent to any additional delay in payment on December 30, 2022.

{¶50} Finally, in Appellant's second assignment of error, Appellant argues the facts in this case do not establish criminal conduct. To the contrary, pursuant to R.C. 2913.02(A)(2), the failure to pay for services is converted from a civil matter into both a civil and criminal matter where the state can establish beyond a reasonable doubt that the defendant had the intent to deprive the provider of the services when the provider revoked her consent to any additional delay in payment.

{¶51} Accordingly, we find there was sufficient evidence in the record such that a rational trier of fact could have found the essential elements of the crime. As a consequence, Appellant's first, second, and fourth assignments of error have no merit.

## ASSIGNMENT OF ERROR NO. 3

**THE CONVICTION OF [APPELLANT] WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AND, AS A RESULT, THEREOF, MUST BE REVERSED.**

{¶52} "Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other."

Case No. 24 MA 0107

*State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). A conviction will only be reversed as against the manifest weight of the evidence in exceptional circumstances. *Id.* This is so because the triers of fact are in a better position to determine credibility issues, since they personally viewed the demeanor, voice inflections and gestures of the witnesses. *State v. Hill*, 75 Ohio St.3d 195, 208 (1996); *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967).

**{¶53}** Thus, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387. However, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 2002 WL 407847, *2 (7th Dist. March 13, 2002), citing *State v. Gore*, 131 Ohio App.3d 197, 201 (7th Dist.1999).

**{¶54}** Although Appellant attempted to contradict the state's evidence with her testimony, she provided additional evidence upon which the trier of fact could have predicated the verdict. Appellant alleged she offered to pay the salon bill in full five days after the services were rendered, but Killa refused to accept the payment. However, Agent Doran testified Killa expressed her willingness to accept payment in full in satisfaction of the bill even after the criminal complaint was filed. Further, Appellant's testimony that she had $220 on December 28, 2022, but did not pay that portion of the bill, then spent the $220 on other things, could have been considered by the trier of fact to be further evidence of Appellant's intent to deprive Killa of the salon services when Killa revoked her consent to any additional delay in payment on December 30, 2022. The same is true of her expenditure of an additional $180 at another salon on March 11, 2023, despite the outstanding bill at TheFixx. Finally, Appellant's testimony that she was compelled to use Afterpay because the bill was greater than the estimate directly contradicted her earlier testimony that she had disclosed her intent to pay through the application to Killa prior to her appointment that day.

**{¶55}** In the absence of direct evidence of Appellant's intent on December 30, 2022, the state offered circumstantial evidence in order to demonstrate Appellant purposefully deprived Killa of the salon services when Killa revoked her consent to any

additional delay in payment on December 30, 2022. The verdict is predicated upon the credibility attributed to the testimony offered at trial. Because the trier of fact credited the testimony of the state's witnesses, rather than Appellant, we find the verdict does not constitute a manifest miscarriage of justice and Appellant's third assignment of error has no merit.

## CONCLUSION

**{¶56}** For the foregoing reasons, Appellant's conviction is affirmed.

Robb, P.J., concurs.

Hanni, J., concurs.

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Mahoning County Court No. 2 of Mahoning County, Ohio, is affirmed. Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**